## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RITA RODRÍGUEZ-FALCIANI**<br><br>   **Plaintiff**<br><br>      **vs.**<br><br>**TRIPLE S-SALUD, INC. aka TRIPLE S;**<br>**HATO REY PATHOLOGY ASSOCIATES, INC.**<br>**aka Hato Rey Pathology or HRP**<br><br>   **Defendants** | **Civil No. 2018-**<br><br>**Jury Trial demanded** |

## COMPLAINT

**TO THE HONORABLE COURT:**

NOW COMES THE PLAINTIFF, through undersigned counsel and respectfully allege and plead as follows:

### I. Introduction

1.1 This is an action brought on behalf of Rita Rodríguez-Falciani, a long-term employee of the defendant Triple-S Salud, Inc. (hereinafter referred to as "Triple-S" or "the company"), who was discharged in March of 2017.

1.2 Plaintiff presents this claim to vindicate rights under the laws of Puerto Rico and the United States which prohibit retaliation for protected activity.  Her claim against Triple-S is based on the federal False Claims Act and on the anti-retaliation provisions of Law 115.  In the alternative, plaintiff seeks the statutory separation payment owed to her pursuant to Law 80, Puerto Rico's Statutory Separation statute.  She also seeks the payment of bonuses owed to her, as well as attorneys' fees and litigation costs pursuant to the False Claims Act and Puerto Rico

Law 402.

1,3 Plaintiff also claims damages pursuant to the tort law of Puerto Rico, against both Triple-S and defendant Hato Rey Pathology Associates, Inc, due to tortious interference with her employment relationship and against Hato Rey Pathology for its dissemination of false imputations against her.

1.4 For a period of close to two decades, plaintiff Rita Rodríguez-Falciani (hereinafter referred to as "Ms. Rodríguez-Falciani") held management positions at this healthcare insurance company, including Compliance and Privacy Officer, Director of the Audit and Special Investigations Unit and the Director of Fraud Committee.

1.5 In these positions, plaintiff, who is a licensed attorney and has a Masters in Public Administration, had significant investigative and oversight functions to assure that Triple S was in compliance with federal law and local law.

1.6 As part of her functions, she audited the services provided to the insured by providers such as physicians, dentists and laboratories.

1.7 Plaintiff alleges that she was dismissed in March of 2017, after nineteen (19) years of excellent service, as a result of her participation in an investigation of suspicious practices by certain laboratories and physicians in Puerto Rico, in which they charged for genetic testing services which were not medically indicated, for people insured by Triple S, including those for whom federal funds were disbursed.

1.8 In the months leading up to her dismissal, plaintiff took part in the investigation into four laboratories in Puerto Rico which had engaged in a scheme related to such genetic-testing. These efforts resulted in the filing of three lawsuits, and in the case of defendant Hato Rey Pathology Associates, Inc., in an agreement to return of millions of dollars for claims improperly

billed.

1.9 Ms. Rodríguez-Falciani referred the matter of the aforementioned scheme to both the Office of Inspector General of the federal Department of Human and Health Care Services (hereinafter "OIG-HHS")  and the Office of the United States Attorney for the District of Puerto Rico and met with personnel from these two federal offices to follow up on the progress of the federal investigation.

1.10 Defendant Hato Rey Pathology, Inc., aka HRP (hereinafter "Hato Rey Pathology" or "HRP"), one of the laboratories implicated in the scheme, used considerable pressure to remove Ms. Rodríguez from the investigation and follow-up and monitoring relating to compliance.

1.11 On or about February 15, 2017, Hato Rey Pathology delivered a letter to Triple-S demanding that Ms. Rodríguez be removed from all participation in the aforementioned investigations and questioning her ethics as an attorney.  The letter was signed by a local politician and attorney, Zaida (Cucusa) Hernández.

1.12 Less than a month after Triple-S received the letter by attorney Hernández, written on behalf of HRP, Ms. Rodríguez was summarily terminated from her job.

## II. Jurisdiction and Venue

2.1  The jurisdiction of this court is based on federal question jurisdiction.  *28 USC Sec. 1331,* since plaintiff's principal claim is based on the False Claims Acts, *31 USC § 3729-33.*

2.2 There is also jurisdiction over the Puerto Rico law claims based upon 28 U.S.C. §1367, since these claims arise under the same nucleus of operative facts.

2.3 This court also has jurisdiction over the pendent party, Hato Rey Pathology

Associates, Inc,, pursuant to the same federal jurisdictional statute.

2.4 Venue is proper in the District of Puerto Rico under 28 U.S.C. §1391, where the acts and omissions giving rise to Plaintiffs' claims occurred and all parties reside in Puerto Rico.

### III.  Parties

3.1.  Plaintiff **Rita Rodríguez-Falciani,** an adult citizen and resident of Trujillo Alto, began working at Triple-S in February of 1998 and worked there continuously for a period of over nineteen (19) years, until she was discharged from her employment, without explanation, on March 10, 2017.

3.2 Ms. Rodríguez-Falciani is a licensed attorney.  She graduated from the University of Puerto Rico School of Law in 1989 and obtained her license shortly thereafter.

3.3 She also has a Masters Degree in Public Administration from the University of Puerto Rico.

3.4 Over the years, she has had extensive experience in the field of health care, including but not limited to more than a decade working in the office of the Special Deputy Monitor David Helfeld, in the class action litigation, *Navarro Ayala v. ELA, 74-1301.*

3.5 Defendant **Triple-S Salud, Inc.** is the largest health care insurance company in Puerto Rico.  It is often referred to in the community as "Triple-S."

3.6 The holding company for Triple-S Salud, Inc. is Triple-S Management, a publicly held corporation traded on the New York Stock Exchange (GTS) and monitored by the Securities and Exchange Commission.

3.7 According to Triple-S Management's Annual Report for 2016, Triple-S is "one of the

most significant players in the managed care industry in Puerto Rico .... [with] over 50 years of experience in this industry."  The company offers "a broad portfolio of managed care and related products in the Commercial, Medicaid and Medicare Advantage markets."

3.8 "In the Commercial market, [the company offers] products to corporate accounts, U.S. federal government employees, local government employees, individual accounts and Medicare Supplement."

3.9 Triple-S also administers a number of health care plans for major employers in Puerto Rico which are self-insured and whose plans are governed by the federal Employee Retirement Income Security Act ("ERISA") and monitored by the United States Department of Labor.

3.10 Defendant **Hato Rey Pathology Associates, Inc.** operates a number of self-standing laboratories in San Juan and elsewhere on the island, as well as laboratories in a number of Hospitals, including Ashford Presbyterian Community Hospital, Hospital HIMA San Pablo in Caguas and Humacao, and Hospital Damas in Ponce.  This defendant may be referred to herein as "Hato Rey Pathology" or "HRP."

3.11 According to its website, Hato Rey Pathology Associates, Inc., performs some 120,000 diagnoses of biopsies a year and is thus one of the largest laboratories in Puerto Rico.

3.12 The President of Hato Rey Pathology Associates, Inc**.** is pathologist Dr. Guillermo Villamarzo.

3.13 One of the health care insurance companies for which Hato Rey Pathology Associates performs services pursuant to contract is the defendant Triple-S Salud.

### IV. Factual averments

**A. Ms. Rodríguez's work at Triple-S**

4.1 Plaintiff began working at Triple-S as a regular employee on February 3, 1998, in the position of attorney in the Division of Medical Affairs

4.2 After approximately one month, Ms. Rodríguez became a part-time employee, working three days per week at Triple-S and two days per week at the Puerto Rico Administration of Mental Health and Anti-addiction Services (ASSMCA).

4.3 Ms. Rodríguez is recognized as one of the primary authors of Law No. 408 of October 2, 2000 (the Mental Health Law of Puerto Rico) and of the first regulation promulgated pursuant to that law.

4.4 She has been a instructor (adjunct professor) at the Medical Science Campus of the University of Puerto Rico for the last fifteen years and worked for more than a decade as a professor at the Puerto Rico Institute of Psychiatry.

4.5 In early February, 2011, Ms. Rodríguez became a full-time employee, holding a managerial position as Compliance and Privacy Officer.

4,6 In that position, Ms. Rodríguez supervised several employees and was responsible for compliance in the Commercial Business of Triple-S, as well as all matters related to privacy.

4.7 In approximately September of 2012, Ms. Rodríguez was assigned oversight responsibility for the Puerto Rico Government Health Plan ("PSG" or "Reforma") as well as for health plans for federal employees.

4.8 Both the Reforma and the federal employees' health plans involve the expenditure of

federal monies.

4.9 In March of 2016, the President of Triple S-Salud, Madeline Hernández gave Ms. Rodríguez a performance bonus of $5,000.00,

4.10  In late April of 2016, the plaintiff received a significant salary increase, in light of her "individual performance and contribution to the achievement of the Company's objectives during the last year." (Translation provided).

4.11 In early July, 2016, Triple S promoted Ms. Rodríguez from a Manager's position to a Director's position, naming her the "Director of the Office of Clinical Auditing and Special Investigations."  In writing, Triple-S informed plaintiff that her job title thereafter would be the "Director of the Office of Fraud and Abuse."

4.12 For this new position, plaintiff received a salary increase of approximately fifteen percent (15%), to a total of $86,000.00.

4.13 She was also entitled to a performance bonus which could reach $20,000.00.

4.14 As established by Triple-S, the duties to be performed by Ms. Rodríguez included the following:

> a. Review of the policies related to fraud and abuse;
>
> b. Organization of the Office of Audits and Investigations;
>
> c. Providing trainings to external providers and employees regarding Fraud, Waste and Abuse ("FWA")
>
> d. Oversight of Triple-S entities on Fraud, Waste and Abuse (FWA);
>
> e. Creation of a Fraud Committee;

f. Attending to Fraud referrals; and

g. Responsible for Fraud Waste & Abuse investigations into all lines of business operated by Triple-S, including Medicare Advantage, for which Ms. Rodríguez previously did not have this responsibility.

4.15 Some eight months after being given this new assignment, Ms. Rodríguez was summarily dismissed from Triple-S.

**B. The Genetic Testing Scheme involving HRP**

4.16 Starting in December of 2015, Ms. Rodríguez played a critical role in alerting Triple-S to schemes regarding genetic testing and claims submitted therefor, without medical need.

4.17 Pursuant to schemes of this nature, runners and sales representatives from at least two laboratories based in the United States would approach patients at physicians' offices, including those insured by Triple-S, offering them a "free" test, which would not involve the payment of a deductible, since the cost would be assumed by Triple-S.

4.18 These individuals would deliver the saliva samples from patients in the offices of the physicians to four laboratories in Puerto Rico which were Triple-S contracted providers.

4.19 The four laboratories would send the samples to laboratories based in the continental United States.

4.20 The laboratories in Puerto Rico would then bill Triple-S for the procedure, although their only role was to send the samples to the State-side laboratories.

4.21 The tests were entirely devoid of any medical necessity.

4.22 The genetic testing scheme led to a proliferation of unnecessary genetic testing in Puerto Rico.

4.23 An investigation was conducted at Triple-S regarding this practice, to determine whether it was fraudulent and illegal, and/or in violation of the contract between the aforementioned providers and Triple-S, which prohibits soliciting.

4.24 Upon investigation, Triple-S determined that between November of 2014 and May of 2016, Triple-S had paid the total amount of $8,705,660 for these procedures.

4.25 Further investigation put the loss to Triple-S as a result of the performance of these tests without medical necessity at a total of some $13,700,00.00.

4.26 The amount paid by Triple-S for these unnecessary tests averaged between $11,000.00 and $16,000.00 per patient.

4.27 The testing included federal employees and participants in the "Reforma," both of which implied the expenditure of federal funds, as well as self-insured private employers whose health plans are subject to auditing by the U.S. Department of Labor.

4.28 One of the laboratories in Puerto Rico which had multi-million dollar billings for these genetic laboratory tests was defendant **Hato Rey Pathology**.

4.29 The amount which Hato Rey Pathology billed for such services was approximately $2.4 million dollars.

### C. The July 8, 2016 letter and its aftermath

4.30 On or about July 8, 2016, Triple-S sent a letter to HRP Lab, Inc, attention Dr. Villamarzo, indicating that Triple-S had conducted an audit of the services HRP had provided

and had determined that payment for certain services would be denied *inter alia* for the following reasons:

    a. The samples were not taken at an authorized laboratory;

    b. HRP had charged for services which had not been performed by HRP;

    c. HRP had accepted and processed medical orders which did not include the description of the specific tests required by the referring physician or the diagnosis related thereto; and

    d.  The Triple-S provider agreement prohibits payment for services which arise as a consequence of solicitation by a third party,

4.31 The letter, which was signed by Oscar Figueroa Armaiz, a Manager under Ms. Rodríguez's supervision, invited HRP to a meeting to be held on July 21, 2016, to discuss this matter.

4.32 Thereafter, HRP requested that the meeting be rescheduled, and it was eventually held on August 19, 2016.

4.33 Four attorneys represented Hato Rey Pathology in the August 19, 2016 meeting.

4.34 During the meeting, Ms. Rodríguez read the letter which had been sent to Hato Rey Pathology, point by point, for discussion by those present.

4.35  During the meeting, an attorney for Hato Rey Pathology mentioned the fact that the Dr. Villamarzo's son, a member of the Board of HRP, had been an Assistant U.S. Attorney and that the imputations being made were quite serious and could implicate federal criminal charges.

D. **The referrals to the federal authorities**

4.36 As part of her work as Director of the Office of Clinical Auditing and Special Investigations, Ms. Rodríguez would have contact with federal authorities, including regular bi-monthly meetings and other contacts for case discussion and updates.

4.37 Approximately ten days after the meeting between Triple-S and Hato Rey Pathology described above, Ms. Rodríguez referred  the matter of genetic testing without medical necessity to the Office of the Inspector General of the United States Department of Health and Human Services ("OIG/HHS" or "the Office of Inspector General") for further investigation.

4.38 In an August 29th, 2016 letter to the Office of Inspector General, Ms. Rodríguez informed this federal watchdog entity of the results of the investigation conducting by the Triple-S Compliance Department.

4.39 Shortly thereafter, Ms. Rodríguez presented the same matter to the Civil Division of the Office of the U.S. Attorney in Puerto Rico.

4.40 The presentations which plaintiff provided to OIG/HHS and to the Office of the U.S. Attorney in Puerto Rico described the payment of some $304,000.00 for tests billed by Hato Rey Pathology for federal employees pursuant to the aforementioned scheme.

4.41 Since considerable amounts paid pursuant to the aforementioned scheme covered federal employees,Triple-S also referred the matter to the Office of Personnel Management (OPM) of the federal government.

4.42 On September 13, 2016, Triple-S Vice President Martiza Vázquez Garay, sent a letter to Dr. Guillermo Villamarzo of HRP, reaffirming the conclusion that HRP had engaged in

the improper practices, and that the matter was being referred to the federal authorities.

4.43 In the September 13, 2016 letter, Triple-S informed Dr. Villamarzo that HRP would have to pay back close to $2.4 million dollars and that it had decided to cancel the contract between HRP and Triple-S.

4.45 Eventually, HRP reached an agreement with Triple-S which involved the return of some $2 million dollars.

4.46 As part of the settlement, Hato Rey Pathology would submit a corrective action plan to Triple-S, pursuant to which there would be ongoing monitoring and auditing of Hato Rey Pathology's compliance with certain requirements, including but not the employment of a Compliance Officer and training of employees on Fraud Waste and Abuse.

4.47 The monitoring was to be conducted by Triple-S's Office of Clinical Auditing and Special Investigations directed by the plaintiff, Rita Rodríguez Falciani.

4.48 Prior to her discharge in early March of 2017, Ms. Rodríguez was never shown the corrective action plan, despite the fact that she was charged with continuing monitoring of the plan and made several requests therefor.

**E. The Retaliation**

4.49 Shortly after the events described above, Dr. Guillermo Villamarzo of HRP, commented to an official of another Triple-S subsidiary that "one Rita Rodríguez" ("una tal Rita Rodríguez") had cancelled the Triple-S contract with Hato Rey Pathologies.

4.50 The above allegation was not true, since the cancellation had been proposed by another department within Triple-S.

4.51 On or about February 15, 2017, Hato Rey Pathology delivered a letter to attorney Carlos Rodríguez, Vice President of Legal Affairs, Chief Legal Counsel of Triple-S Management, and Secretary of the Board of Triple-S Management.

4.52 The letter was signed by Zaida "Cucusa" Hernández and under her letterhead.

4.53 Zaida "Cucusa" Hernández is a former Speaker of the House of Representatives of Puerto Rico and a former Judge of the Puerto Rico Court of Appeals.

4.54 On information and belief, Atty. Hernández, who had not participated in the meeting of August 19, 2016, indicated that she was assuming the representation of Hato Rey Pathology, and was writing on behalf of her client.

4.55 On information and belief, the letter affirmed that it been had the plaintiff, Rita Rodríguez-Falciani, who had written the July 8, 2016 letter including the imputations of possible "soliciting" on the part of HRP.

4.56 Ms. Rodríguez had not, in fact, written that letter, although she had read it aloud during the meeting of August 19, 2017.

4.57 In the letter provided by HRP to Triple-S, atty. Hernández also questioned Ms. Rodríguez's ethics as a licensed attorney and, on information and belief, stated that her client, Hato Rey Pathologies, was considering filing ethics charges against her.

4.58 On information and belief, in the letter, HRP demanded that Ms. Rodríguez be removed from the monitoring of the settlement entered into by HRP and the ongoing investigation into the practices.

4.59 The letter was copied to the President of Triple-S Salud, Madeline Hernández, and

to Triple-S Salud Vice President, Dorelisse Juarbe.

4.60 On information and belief, atty. Hernández personally visited the offices of Triple-S to complain about Ms. Rodríguez.

4.61 Ms. Rodríguez learned of the letter on February 15, 2017, when her supervisor at Triple-S, Ms. Jenny Cárdenas, called plaintiff into her office and showed her the Cucusa Hernández letter in her laptop.

4.62 Ms. Cárdenas indicated that she could not provide the plaintiff with a copy of the letter.

4.63 To this day, despite plaintiffs' requests for a copy of the letter delivered by atty. Hernández to Triple-S, both Triple-S and atty. Hernández have refused to provide her with a copy.

4.64 After the letter was delivered to Triple-S, the plaintiff was, in effect, excluded from all work related to Hato Rey Pathology.

4.65 Although the time frame for evaluations in Triple-S usually culminates in February of each year, plaintiff was not evaluated in 2017 related to her performance in 2016.

4.66 Despite the fact that plaintiff had met her goals, in the absence of an evaluation, she never received the bonus of up to $20,000.00 to which she was entitled.

4.67 At all times, higher management at Triple-S, including General Counsel Carlos Rodríguez, to whom the February 15th, 2017 letter by Zaida "Cucusa" Hernández was addressed, knew that Ms. Rodríguez was in communication with the federal authorities regarding the situation of the unnecessary genetic testing in general, and HRP in particular.

4.68 On several occasions during the early months of 2017, plaintiff addressed with Triple-S General Counsel, Carlos Rodríguez, the need to report to the Office of Civil Rights (OCR) of the federal Department of Health and Human Services, the fact that the physicians involved in the genetic testing scheme had possibly violated protections for patient privacy ("PHI" or "Protected Health Information.")

4.69 On information and belief, atty. Rodríguez took no action with respect to the matter addressed in the previous paragraph.

4.70 On or about March 9, 2017, the plaintiff received a draft of a protocol prepared by the Triple-S Legal Office directed by attorney Carlos Rodríguez, pursuant to which Ms. Rodríguez would be prohibited from referring matters to the federal authorities without the Legal Department's specific authorization.

4.71 On the following day, Friday, March 10, 2017, less than a month after Triple-S received the letter by Zaida "Cucusa" Hernández, and attorney Hernández visited Ms. Rodríguez-Falciani's employer, the plaintiff was summarily dismissed from her job.

4.72 The pressure exercised by Hato Rey Pathologies and its attorney, the former Speaker of the House of Representatives, caused Triple-S to dismiss the plaintiff.

### F. Damages

4.73 As a result of the events described herein, Ms. Rodríguez remained without income for a period of time and suffered other income-related losses.

4.74 As a result of the events described herein, Ms. Rodríguez has suffered emotional and physical effects, including anxiety, depressiveness, sleepnessness, stimulus avoidance,

weight gain, loss of interest in daily activities, worsening of her asthma condition, pains, and other manifestations of stress.

4.75 These emotional conditions and the physical effects correlated thereto have been exacerbated by her ongoing concern about the potential effect of the unfounded allegations made by HPR that she had engaged in unethical conduct, imputations which are grave for a licensed attorney, These damages have been exacerbated by the refusal of both Triple-S and HRP to provide her with a copy of the February 15, 2017 letter, which she needs in order to defend herself against such allegations and imputations.

4.76 As a specific result of the letter submitted to Triple-S by Hato Rey Pathology, signed by the former Speaker of the House of Representatives, as described herein, as well as the refusal by Triple-S to provide her with a copy of the same, the plaintiff has suffered all of the aforementioned effects and fear and anxiety related to the possibility that she might be subjected to an ethics complaint, regardless of its being entirely unjustified.

## V. <u>First Cause of Action - False Claims Act - Whistleblower Protection</u>

5.1  This cause of action is against defendant Triple-S.

5.2  Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this complaint as if fully alleged herein.

5.3  Plaintiff is a protected "whistleblower" under 31 U.S.C. § 3730(h), who came forward upon becoming aware of the genetic testing scheme described herein and took her concerns about the potential violation of federal law to the attention of the federal authorities.

5.4 At all times relevant hereto, plaintiff had a good faith belief that the defendant Hato Rey Pathology Associates, Inc. and three other laboratories in Puerto Rico engaged in practices involving the presentation of false claims for payment to the United States, in violation of the False Claims Act, 31 USC §3729 et seq.

5.5 Plaintiff's good faith belief that these laboratories had violated the False Claims Act was based *inter alia* on the fact that the four laboratories had caused the submission of claims which these Triple-S providers knew to be false, for the coverage of genetic testing which was not medically indicated or performed by the providers.

5.6 It was plaintiff's good faith belief that the four laboratories knowingly submitted these false claims to Triple-S, with knowledge that the claims would eventually be submitted for payment or reimbursement by the federal government.

5.7 As set forth above, Ms. Rodríguez called the scheme related to the ordering and performing of unnecessary genetic testing by several laboratories in Puerto Rico, including Hato Rey Pathology, to the attention of Triple-S.

5.8 As set forth above, plaintiff referred this matter to the federal authorities and provided them with lawful assistance in their investigations into these matters.

5.9 Hato Rey Pathology knew that plaintiff Rita Rodríguez would be monitoring its ongoing compliance with the law and with the settlement it had reached with Triple-S, for the payment of some $2 million dollars corresponding to these services that were not medically indicated and were not performed by HRP.

5.10   Defendant HRP unduly pressured Triple-S to retaliate against the plaintiff for her

having engaged in these lawful acts, and to remove her from any further involvement of the monitoring of this defendant's compliance with the Settlement Agreement reached with Triple-S as a result of the genetic testing scheme.

5.11 On or about February 15, 2017, HRP delivered a letter signed by Zaida "Cucusa" Hernández, a well-known politician, to Triple-S's General Counsel, Carlos Rodríguez for the purpose of pressuring plaintiff's employer to take retaliatory action against her.

5.12 Shortly before Ms. Rodríguez was terminated, atty Hernández visited the Triple-S offices, to complain about plaintiff and for the purpose of having Triple-S retaliate against her.

5.13  Less than three weeks after Triple-S received the letter signed by atty. Hernández, it dismissed Ms. Rodríguez from her employment, with no explanation.

5.14 The dismissal came several months after the plaintiff received a performance bonus, a salary increase and a promotion.

5.15 The dismissal was in retaliation for plaintiff's work in bringing to light the false claims submitted on behalf of Hato Rey Pathologies and other laboratories, and taking these concerns to the aforementioned regulatory, investigatory and prosecutorial federal entities, as set forth in more detail above.

5.16 Plaintiff was discharged from her position as a result of the pressure Hato Rey Pathology placed on her employer, Triple-S Salud, and HRP's demand that she be removed from any further monitoring activity with respect to these violations.

5.17 Plaintiff was discharged as a result of this pressure exerted by this Triple-S Salud provider, HRP, to demean her credibility and to prevent her from taking further action to bring

these violations to the attention of the federal authorities

5.18  The action by Triple-S Salud in terminating Ms. Rodríguez reasonably would dissuade other persons from bringing such violations to the attention of their employer.

5.19  The False Claims Act, 31 USC §3730(h) rovides that "(1) Any employee .... shall be entitled to all relief necessary to make that employee .... whole, if that employee is ... discharged,... threatened, harassed, or in any other manner discriminated against in te terms and conditions of employment because of lawful acts done by the employee ... in furtherance of ... efforts to stop one or more violations of this subchapter."

5.20   As a result of her abrupt and unjustified discharge, plaintiff suffered a loss of income which is estimated at this time at $50,000.00 and is expected to increase in the future.

5.21 As a result of the discharge, plaintiff lost her entitlement to a bonus which would have reached $20,000.00 on the basis of her excellent performance during the entire year of 2016 and should have been paid in approximately March of 2017.

5.22   As a result of the discharge, plaintiff has suffered emotional and physical damages, which are currently calculated at $250,000.00, and which are expected to increase in the future.

5.23 Pursuant to 31 U.S.C. §3730(h)(2), plaintiff is entitled to the following relief: double back pay; interest on back pay; compensation for her emotional and physical damages; litigation costs and reasonable attorneys fees.

5.24 Pursuant to this statute, plaintiff is currently entitled to monetary compensation of at least the following amounts, with the amounts expected to increase in the future:

a. $50,000.00 for back pay;

      b. $50,000.00 for a doubling of back pay;

      c. $ 20,000.00 for the bonus;

      d. $ 20,000.00 for the doubling of the bonus;

      e. $ 3,500.00 for interest on back pay;

      f. $ 250,000.00 for compensatory damages

5.25 Plaintiff is also entitled to reinstatement to her position with the same seniority status that she would have had were it not for the retaliatory discharge.

5.26 In the event that reinstatement is not feasible, plaintiff would be entitled to a front pay equivalent.

5.27 Plaintiff is also entitled to reasonable attorneys' fees and litigation expenses.

## VI. Second Cause of Action - Law 115

6.1  This cause of action is against defendant Triple-S.

6.2  Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this complaint as if fully alleged herein.

6.3 Plaintiff was discharged in violation of Puerto Rico Law 115, 29 L.P.R,A, 194 *et seq.* which prevents employers from discharging employees in retaliation for having provided or attempting to provide information before administrative forums (U.S. Attorney's Office, OIG-HHS and OPM)  and in internal forums established in Triple-S regarding possible violations of the False Claims Act.

6.4  As a result of her abrupt and unjustified discharge, plaintiff suffered a loss of income which is estimated at this time at $50,000.00 and is expected to increase in the future.

6.5 As a result of the discharge, plaintiff lost her entitlement to a bonus which would have reached $20,000.00 on the basis of her excellent performance during the entire year of 2016 and should have been paid in approximately March of 2017.

6.6 As a result of the discharge, plaintiff has suffered emotional and physical damages, which are currently calculated at $250,000.00, and which are expected to increase in the future.

6.7 Pursuant to Law 115, plaintiff is entitled to a doubling of all of the above amounts.

6.8 On this cause of action, plaintiff is currently entitled to monetary compensation in least the following amounts, with the amounts expected to increase in the future:

       a. $50,000.00 for back pay;

       b. $50,000.00 for a doubling of back pay;

       c. $ 20,000 for the bonus;

       d. $ 20,000 for the doubling of the bonus;

       e. $ 250,000 for compensatory damages;

       f. $250,000 for the doubling of the compensatory damages.

6.9 Plaintiff is also entitled to reinstatement to her position with the same seniority status that she would have had were it not for the retaliatory discharge.

6.10 In the event that reinstatement is not feasible, plaintiff would be entitled to a front pay equivalent.

6.11 Plaintiff is also entitled to reasonable attorneys' fees and litigation expenses.

6.12 Pursuant to 31 U.S.C. §3730(h)(2), plaintiff is entitled to the following relief: double back pay; interest on back pay; compensation for her emotional and physical damages;

litigation costs and reasonable attorneys fees.

## VII.  Third Cause of Action — Unjust Dismissal (Mesada)

7.1 This cause of action is against defendant Triple-S Salud.

7.2 This cause of action is in the alternative with respect to the First and Second Causes of Action set forth above.

7.3   Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this complaint as if fully alleged herein.

7.4 Plaintiff's dismissal from Triple-S was unjust and unwarranted.

7.5 Puerto Rico Law 80, 29 LPRA §185a *et seq.,* provides for payment of statutory separation pay ("mesada") for unjust termination, pursuant to a statutory formula, based on compensation and years of service.

7.6 Under Puerto Rico Law, the employer has the burden of proof to demonstrate "good cause" for the dismissal of an employee.

7.7 Triple-S cannot meet its burden of demonstrating that there was "just cause" for the termination of plaintiff Rita Rodríguez-Falciani.

7.8 For an employee with more than nineteen (19) years of service, the statutory formula is six months of compensation in addition to three weeks for every year of service.

7.9 Plaintiff Rita Rodríguez Falciani had a salary of $86,000.00, and was promised a bonus of up to $20,000.00.

7.10 It is estimated that her total compensation package was in the order of $100,000.00 per annum.

7.11 Pursuant to the statutory formula set forth above, the "mesada" to which Ms. Rodríguez is entitled amounts to $159,615.38 ($50,000.00 corresponding to six months of compensation, plus 57 weeks at the rate of $1,923.08, totaling $109,615.38)

### VIII. Fourth Cause of Action-Tortious Inteference with Contract

8.1 This cause of action is against both defendants, Triple S-Salud and Hato Rey Pathology Assocates, Inc.

8.2 Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this complaint as if fully alleged herein.

8.3 Article 1802 of the Civil Code of Puerto Rico provides for liability for those who, through fault or negligence, cause damage to another. *31 LPRA §5141.*

8.4 Hato Rey Pathology acted with fault by pressuring Triple-S Salud to take retaliatory action against Ms. Rodríguez.

8.5 Ms. Rodríguez had a contractual relationship with Triple-S Salud.

8.6 Hato Rey Pathology knew of the contractual relationship.

8.7 By taking the actions described herein, including the use of a well-known local politician to secure retaliatory action against Ms. Rodríguez, Hato Rey Pathology interfered in a tortious manner with the aforementioned contractual relationship.

8.8 Hato Rey Pathology acted with the precise intention to interfere with the aforementioned contractual relationship.

8.9 Through its actions, Hato Rey Pathology provoked or contributed to the decision by Triple-S to terminate its contractual relationship with the plaintiff.

8.10 Triple-S Salud and Hato Rey Pathology are joint and severally liable for the damage caused by the actions described in this cause of action.

## IX.  Fifth Cause of Action- General Tort Law of Puerto Rico and Libel

9.1   This cause of action is against defendant Hato Rey Pathology Assocates, Inc.

9.2   Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this complaint as if fully alleged herein.

9.3 Article 1802 of the Civil Code of Puerto Rico provides for liability for those who, through fault or negligence, cause damage to another. *31 LPRA §5141.*

9.4 Pursuant to the law of Puerto Rico, a person or entity which publishes false information about another is liable for the payment of damages.  *32 LPRA §3141.*

9.5 HRP's letter signed by Zaida ("Cucusa") Hernández included false assertions about Ms. Rodríguez and false imputations of ethical violations on her part.

9.6 These assertions were made negligently, recklessly, with deliberate indifference to the truth, with the intent to do harm and/or with malice.

9.7 The actions described in this cause of action caused emotional damages to the plaintiff which are estimated to be in excess of $ 100,000.00.

## X. Sixth Cause of Action - Attorneys Fees (Law 402)

10.1 This cause of action is against Triple S-Salud.

10.2   Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs of this complaint as if fully alleged herein.

10.3 Independently of the specific statutes affording the plaintiff the right to attorneys'

fees against this defendant, this remedy is mandated by Puerto Rico Law 402 of May 12, 1950, *32 LPRA 3114 et seq.*

10.4  Pursuant to Law 402 and the applicable case law, plaintiff's attorneys are prohibited from charging any fees to Ms. Rodríguez with respect to the claims against her former employer, Triple-S Salud.

10.5 Law 402 mandates that if plaintiff prevails on her claims against Triple-S, all such fees for plaintiff's counsel must be paid for by her former  employer.

10.6 Plaintiff is entitled to payment of fees of no less than 25%, independent of and in addition to the amounts to be recovered by the plaintiffs, an amount which can be increased pursuant to the lodestar method.


## XI. <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs Rita Rodríguez-Falciani respectfully request that this court order the following relief:

**a**. **<u>Against Defendant Triple S-Salud:</u>**

1. Compensatory damages and lost income of no less than $ 320,000.00, on the First, Second and Fourth Cause of Action.

2. Doubling of the above amounts pursuant to the False Claims Act and Puerto Rico Law 115, for an additional amount no less than $ 320,000.00.

3. In the alternative, statutory separation pay ("mesada") which is calculated at approximately $159,615.38;

4. Reasonable attorneys fees, costs, litigation expenses and applicable interests;

5. Reinstatement to plaintiff's position at Triple-S or in the alternative, front pay in *lieu* thereof.

6. Whatever other relief this court deems just and equitable.


**b. <u>Against Hato Rey Pathology Associates, Inc.</u>**

1. Compensatory damages and lost income caused by tortious interference, joint and severally with defendant Triple-S, for a total of no less than $ 320,000.00.

2. Damages for general tort liability related to the dissemination of false asseverations and imputations against Ms. Rodríguez, in an amount no less than $100,000.00.

3. Whatever other relief this court deems just and equitable.

A JURY TRIAL is hereby demanded.

Respectfully submitted in San Juan, Puerto Rico this 7th day of February, 2018.

**Berkan/Mendez**
O'Neill St. G-11
San Juan, P.R. 00918-2301
Tel. (787) 764-0814;Fax (787) 250-0986
bermen@prtc.net

By:   <u>Judith Berkan</u>                                  <u>Mary Jo Méndez Vilella</u>
       /S/ Judith Berkan                              /S/ Mary Jo Méndez Vilella
      USDC No.200803                              USDC No. 209407
      berkanj@microjuris.com                    mendezmaryjo@microjuris.com